IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MILTON PARKS,                   )
        Plaintiff,      )
                                )
    v.                         )      1:04CV00487
                                )
GARY R. MILLER, et al.,         )
        Defendants.     )

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on Defendants' motion for summary judgment (docket no. 38). The court has extended Plaintiff's time to respond to the motion, and he has responded in opposition. For the reasons which follow, it will be recommended that Defendants' motion be granted.

**Background**

Plaintiff's § 1983 complaint, filed on May 28, 2004, alleges that Defendants violated his constitutional right of access to the courts by delaying his outgoing mail. Specifically, Plaintiff alleges that Defendants' negligence and failure to follow North Carolina Department of Correction ("DOC") policies and procedures caused a delay in his legal mail, thereby denying him access to the courts. Compl., pp.3-5. Plaintiff names as Defendants Superintendent Gary R. Miller, Captain Harry Davis, Wanda Crouch, Carol Davis, and Jenelle Killian, all at the Morrison Correctional Institution ("Morrison"). The mail at issue was a piece of legal mail addressed to the Lex (Lexus?) Group, located in Richmond, Virginia, a typing service. Killian Aff., ¶ 5; *see*

*also* Plaintiff's Rebuttal, etc. (docket no. 50) Exh.3 (identifying package addressed to The Lex Group, Richmond, Va.), Exh.5, p.3 (Plaintiff inquires about package addressed to Lex Group), Exh.6 (Plaintiff's letter to the Supreme Court explaining that me must locate a typing service). Plaintiff requested that prison officials mail the package as soon as possible in order to meet a deadline for the United States Supreme Court.

The court will first detail the time line of relevant events. Defendant Killian received a package from Plaintiff on Wednesday, February 13, 2002. *Id*. at ¶ 4. Plaintiff was required to submit a special draw from his trustee account because the cost of postage was $7.55. *Id*. at ¶ 7. Killian submitted Plaintiff's special draw request for approval to Defendant Wanda Crouch, Trust Fund Coordinator, on February 14, 2002. *Id*. at ¶ 8. Crouch was not at work on February 14, *id*; however, when she returned to work on February 15, she checked Plaintiff's account to ensure that there were sufficient funds in his account and sent the form to Defendant Gary Miller, the Superintendent, for his signature. Crouch Aff., ¶ 5. Miller signed the form on the same date. *Id*.

On Monday, February 18, Crouch discovered that she could not withdraw the needed postage from Plaintiff's trust fund account because he had been transferred to McCain Correctional Hospital ("McCain") on Sunday, February 17. *Id*. at ¶¶ 6-7. Crouch informed Killian of Plaintiff's transfer and that, due to the transfer, Plaintiff's account could not be assessed. Killian placed Plaintiff's mail in a secure location,

2

believing that Plaintiff would return to Morrison within a day or two. Killian Aff. ¶ 10.

On February 20, Killian received a phone call from Ms. Angela Miles, Plaintiff's case worker at McCain. Miles informed Killian that Plaintiff's treatment at McCain was ongoing. Davis Aff., ¶ 9 As a result, Killian placed Plaintiff's mail and newspapers in a large envelope addressed to Plaintiff at McCain on Thursday, February 21. *Id.*

On Monday, February 25, Plaintiff informed Killian that he did not receive his mail while at McCain. Killian Aff., ¶ 14. Killian called the hospital and spoke with several individuals in an attempt to find out what happened to Plaintiff's mail. *Id.* at ¶ 15. Two days later, Killian learned that, though the newspapers included in Plaintiff's mail were found, the envelope addressed to the Lexus Group was still missing. *Id.* at ¶ 16. On March 8, Plaintiff's mail was returned to Morrison by courier. No explanation was given as to what happened to the mail. *Id.* at ¶ 20. Upon receipt, Killian delivered the returned mail to Plaintiff. *Id.* at ¶ 21.

Plaintiff asserts that because Defendants failed to process his mail in a timely manner, he was prevented from successfully submitting a Petition for a Writ of Certiorari to the United States Supreme Court. In addition to his right-of-access claim, Plaintiff also alleges that his due process rights were violated after he complained of the delay. Plaintiff claims that Defendant Carol Davis, Plaintiff's case manager at Morrison, misinterpreted the reason given for the denial of Plaintiff's appeal and communicated this erroneous information to Superintendent Miller.

Compl., p.7. Plaintiff also alleges that Miller failed to properly train the officers under his authority, and that Defendants further violated his rights by distorting official documents. *Id.* at pp.6-7, 9. Plaintiff seeks compensatory and punitive damages totaling in excess of one million dollars for these alleged violations. *Id.* at p.14.

**Analysis**

The Constitution provides prisoners a right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817 (1977); *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Supreme Court has stated that this right of access "assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff*, 418 U.S. at 579. The Supreme Court has not extended this right to encompass more than the ability to prepare and transmit a *necessary* legal document to a court. *See id.* at 576. In order to show a denial of access, an inmate must demonstrate an actual injury stemming from the defendants' unconstitutional conduct. *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996). If a litigant's position is not prejudiced by the claimed violation, his claim of denial of access to the courts is not valid. *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1991).

Plaintiff simply was not prejudiced in any way by Defendants' acts or omissions relating to the handling of his outgoing mail. Whether Plaintiff's appeal to the United States Supreme Court was not time-barred or not, the fault cannot be attributed to Defendants. Rather, significant intervening events other than

Defendants' actions appear to have resulted in Plaintiff missing the filing deadline. First, from Plaintiff's own submissions in this court, it appears that Plaintiff waited almost the full 90 days allowed for him to prepare papers to be submitted to the Supreme Court before asking that court for additional time. *See* Plaintiff's Rebuttal, etc. (docket no. 50) Exh.6 (Plaintiff's letter to the Supreme Court dated February 12, 2002, explaining that his deadline was February 27, 2002; that his first typist was ill and that he had to locate another typing service; and that he sought more time to file). Thus Plaintiff's own submissions to this court show that he waited 75 days of the allotted 90 days before he even drafted his letter to the Supreme Court asking for additional time. Second, the fact that Plaintiff's first typist became ill and he had to find a substitute typing service on such short notice cannot be attributed to Defendants. Third, the Supreme Court rejected Plaintiff's request for additional time for several reasons: He failed to include the opinion of the court of appeals in his request; he failed to include the order of the court of appeals denying rehearing; he failed to "set forth with specificity the reasons" for his request for more time; and failed to include a certificate of service on his request. *See id.* Exh. 7 (letter from Clerk of the Supreme Court). The rejection of Plaintiff's request by the Supreme Court cannot in any way be attributed to Defendants' actions. Moreover, the mailing of Plaintiff's package to the Lex Group, even if done on the very day that Plaintiff submitted the package to prison officials, had no bearing on the rejection by the Supreme Court of Plaintiff's request for more time. Put simply, it is not enough for

Plaintiff to allege shortcomings in Defendants' policies or actions regarding the transmission of Plaintiff's mail; rather, in order to succeed, Plaintiff must show that these alleged shortcomings "hindered his efforts to pursue a legal claim." *See Lewis*, 518 U.S. at 351. Defendants' actions, even if found to unreasonably delay the transmission of Plaintiff's legal mail, did not hinder Plaintiff's ability to file his legal claim because they did not prevent the preparation or transmission of a *necessary* legal document to a court. Therefore, Plaintiff has not satisfied the element of legal prejudice necessary to set forth a cognizable denial-of-access claim.

In addition to Plaintiff's failure to show the necessary legal prejudice, it should also be noted that this court does not view the delay at issue as unreasonable. To be sure, an unreasonable delay in the dissemination of mail may give rise to a constitutional claim. *See Bolding v. Holshouser*, 575 F.2d 461 (4th Cir. 1978); *see also Owen v. Shuler*, 466 F. Supp. 5, 6 (N.D. Ind. 1977) ("So long as a delay in mail is not unreasonable, it does not reach constitutional dimensions."). The initial delay in transmitting Plaintiff's mail, however, was reasonable. Defendant Crouch's absence on Thursday, February 14, 2002, prevented her from approving the special draw Plaintiff submitted to access funds from his trustee account, and this approval was a necessary step in sending Plaintiff's mail due to the cost of the postage. Crouch approved the special draw the next day upon her return to work, and Superintendent Miller signed the approval form on the same date. Crouch then discovered on Monday, February 18, that she could not withdraw the necessary

6

postage from Plaintiff's account because he had been transferred to McCain on Sunday, February 17. Courts have held that overnight delays and weekend delays do not constitute unreasonable delays in mail delivery to prisoners. *See Owen*, 466 F. Supp. at 6.

Furthermore, Defendants' decision to hold Plaintiff's package at Morrison until learning that Plaintiff would be held at McCain for an undetermined amount of time was also reasonable, given that it was common practice for inmates to go to McCain for short-term treatment. In short, Defendants followed the proper DOC procedures in handling Plaintiff's legal mail, and any delay resulting from these procedures was reasonable. As for the lengthy, unexplained delay between the delivery of Plaintiff's mail to McCain and its return to Morrison, this was not the fault of the named Defendants.

Plaintiff also contends that the Division of Prisons requires legal mail from inmates to be processed within 24 hours. Compl., p.4; Resp. to Summ. Judg. Mot., pp.6-8 (docket no. 49). Plaintiff's assertion is incorrect. The DOC policy requires only that outgoing legal mail from inmates not be "impeded in its transmission;" it does not mandate that an inmate's outgoing legal mail be processed within a specified time frame. Killian Aff., Exhibit A. This court does not find that a reasonable administrative delay in the processing and transmission of Plaintiff's mail

7

violates this policy.

Plaintiff's allegations concerning Superintendent Miller are also without merit. Plaintiff asserts that Miller's failure to properly train his subordinates or initiate corrective action prior to the delay of Plaintiff's mail was the primary reason behind the delay. While it is true that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates, *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), Plaintiff has not suffered any constitutional injury arising from the actions of anyone under Miller's supervision. In short, Miller is not liable for the conduct of his subordinates because his subordinates' actions did not violate Plaintiff's constitutional right of access to the courts.

**Conclusion**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that Defendant's motion for summary judgment (docket no. 38) be GRANTED.

_____
Wallace W. Dixon
United States Magistrate Judge

February 1, 2005